```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK


------------------------------------X
                                    :
VLAHADAMIS, et al.,                 :   08-CV-02876
                                    :
              Plaintiffs,           :
                                    :
          v.                        :   December 4, 2008
                                    :
KIERNAN, et al.,                    :   United States Courthouse
                                    :   Central Islip, New York
              Defendants.           :
------------------------------------X

        TRANSCRIPT OF CIVIL CAUSE FOR INITIAL CONFERENCE
            BEFORE THE HONORABLE A. KATHLEEN TOMLINSON
                 UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiffs:          DAVID ANTWORK, ESQ.



For the Defendants:          JELTJE DeJONG, ESQ.




Court Transcriber:           SHARI RIEMER
                             TypeWrite Word Processing Service
                             211 N. Milton Road
                             Saratoga Springs, New York 12866





Proceedings recorded by electronic sound recording,
transcript produced by transcription service
```

```
                                                                  2
 1   (Proceedings being at 10;38 a.m.)
 2             THE CLERK: For initial conference, Vlahadamis, et al.
 3   v. Kiernan, et al. under CV-08-2876.
 4             Counsel, appearances.
 5             MR. ANTWORK:  David A. Antwork, Campanelli &
 6   Associates P.C., 129 Front Street, Mineola, New York 11501 for
 7   the plaintiffs.
 8             THE COURT: Good morning.
 9             MS. DeJONG: Jeltje -- I'm sorry.
10             THE COURT: That's okay.
11             MS. DeJONG:  Jeltje DeJong with the firm of Devitt,
12   Spellman, Barrett for all of the defendants with the exception
13   of the New York State Division of Alcohol Beverage Control and
14   the John and Jane Does.
15             THE COURT: Okay.
16             MS. DeJONG: Good morning.
17             THE COURT: Good morning.
18             MR. ANTWORK: Good morning.
19             THE COURT: Counsel, you can remain seated.  I'll just
20   ask you if you would to keep the mic in front of you and
21   unfortunately it has to be pretty close with that green light
22   on so we can make sure we've got everything picked up by the
23   mics here.
24             It's Vlahadamis, yes?
25             MR. ANTWORK: Vlahadamis.
```

1          THE COURT: Vlahadamis, okay.  My Greek brother-in-law
2     would not be happy with me.
3          In any event, let me be very candid.  I read through
4     the complaint which is lengthy and the answer as well, the
5     affirmative defenses.  It just strike me that this is the kind
6     of case because these people are going to continue to function
7     on all sides here in the County of Suffolk about whether or not
8     this case really ought to be mediated in some fashion.  I don't
9     know if anybody has considered that but I'd certainly like to
10    at least toss that out and see what your thoughts are primarily
11    based on the nature of the allegations here.
12         As I said, I found in the past that in employment
13    cases where the employee is still going to be working there
14    it's a lot better sometimes to try to mediate these things than
15    to necessarily fully litigate them again where the parties are
16    all going to have to look at each other and live with each
17    other and be around for the next however many years.
18         Mr. Antwork, tell me, have you -- has your client
19    considered that?  Have you considered that at all?
20         MR. ANTWORK: I discussed it with the general partner
21    at the office. We do believe that this is settleable for lack
22    of a better term and that mediation might be appropriate but
23    I'm just a little -- my pardon, you mentioned about an
24    employee.  This isn't dealing with an employee situation,
25    employee/employer situation.

4

1         THE COURT: I'm well aware of that. The reason I
2 brought that up is because that was the nature of my practice
3 before I took the bench and I'm just speaking comparatively
4 about the fact that when you still have people involved in the
5 circumstances and who are going to continue to be involved in
6 the circumstances very often there are perhaps in the long run
7 more effective ways to deal with these issues than to go
8 through what is going to take everybody here in full blown
9 litigation. So it's really by way of analogy.
10         MR. ANTWORK: Okay. I apologize for not understanding
11 that.
12         THE COURT: That's okay. That's quite all right.
13         MR. ANTWORK: Actually, I believe that we have offered
14 by way of settlement something that would require, and I have
15 to confirm this again with the client to see if this offer is
16 still on the table, but we have not received a response to this
17 offer yet, but we have offered that we would accept no payment.
18 It would just be that the Town of Southampton tell us or tell
19 the client what it is they need in terms of cabaret license,
20 nightclub license, whatever it is, and essentially assist them
21 in going through the process smoothly and having them enjoy a
22 fair procedure with respect to that process and get that
23 accomplished and then the case really could go away if they
24 could get their cabaret and/or nightclub license to do what
25 they seek to do on Saturday nights with respect to having

1  Hispanic night.
2          Again, saying this now on the record, I don't know if
3  that offer still stands but I know that that offer has been
4  conveyed and there has been no response to settling a case for
5  no money essentially. It's a very settleable case as I said
6  before.
7          THE COURT: Well, let me hear from Ms. DeJong.  That
8  sounds like a hard offer to refuse.
9          MS. DeJONG: Well, Your Honor, plaintiff's counsel has
10 instituted several of these types of cases against different
11 municipalities that we represent and they always seem to be
12 like the club to make the municipality do what they would like
13 to do so in the end result they get either a variance or a
14 permit or whatever.
15         We have no problem with going to mediation. I would
16 love to go to mediation, Judge.  I would like to have a
17 mediator involved in this and get it resolved.  I tend to think
18 if we do it just between ourselves it's not going to work.
19         THE COURT: No. I don't imagine that the lawyers are
20 the issue here frankly. It would seem to me as I was mentioning
21 earlier the parties are all going to have to live with each
22 other, the ones who need to sit down with somebody who can
23 actually get people to come to an understanding of what each
24 side needs and wants here and try to come up with some
25 compromise resolution.

6

1    So it would seem to me certainly that with respect to
2 the nature of the allegations here there are some very fine
3 people on the Eastern District's mediation program board that
4 would be I'm sure very happy to get involved in a case like
5 this.  But obviously I need to know from both sides here that
6 that's something that's desirable.
7    So I understand you've made a demand and to some
8 extent I can appreciate the Town's position because they don't
9 want to find themselves back in these circumstances as I'm sure
10 your client doesn't want to find themselves back in these
11 circumstances.  So I think there's probably more at issue here
12 than just getting whatever licenses are necessary for them to
13 operate.  Your client doesn't want to be in a position where
14 the police are coming here every Saturday night and I'm sure
15 the Town in the environment that's currently existing and all
16 of the publicity that's out there would prefer to try to reach
17 some resolution that the parties can amicably, one would hope,
18 live with ultimately here.
19    So the question is, do you -- are you at a point
20 where before you start spending a lot of money on both sides,
21 especially since plaintiff's counsel is telling me that the
22 demand here is not for any money, rather than get us to a point
23 where money does start becoming an issue that we try to take
24 some affirmative steps to at least see if there's a way to
25 mediate this to some satisfactory conclusion before I have you

7

1  dive headlong into discovery here.
2         Mr. Antwork, you have to tell me what you think at
3  this point.
4         MR. ANTWORK: Again, I tend to agree with you in terms
5  of -- that this is definitely a case that can and should --
6  probably should be mediated.  I just need to get confirmation
7  from my general -- the partner of my firm which I imagine would
8  be yes.  I just -- if I could call Chambers later or send a
9  letter via ECF or however you wish me to do that, I can do
10 that.
11        THE COURT: Why don't we do this?  Today is Thursday
12 the last time I looked I think.  Why don't I give you a week?
13 You talk to your partner and to your clients and I'm sure Ms.
14 DeJong will do the same thing.  I want you to get back to me
15 within those seven days to tell me yeah, we'll move this
16 forward to mediation and if they don't want to go to mediation
17 then I'll go ahead and impose the proposed discovery plan that
18 you've put in here.
19        I certainly think that mediation is the way to go
20 here and I recommend that in the strongest possible terms to
21 both sides but I'll give you a week to at least talk to each
22 other and then get back to me with whether or not this is
23 realistic.  If it is I'll cut an order immediately and I'm sure
24 that the administrator of the mediation program who jumps on
25 these things will take care of it right away.  But otherwise if

8

1  we can't do that -- the other option certainly is I'm more than
2  happy to have a mediation session here.  However, if the
3  parties really want a neutral party outside who can spend the
4  time, which I'm more than happy to do, but certainly somebody
5  who is on the panel and trained in these kinds of issues to
6  have an opportunity to sit down with somebody like that.
7  Either way the options are there.  You know what they are.
8         So next Thursday is the 11th.  I'm going to ask you to
9  get back to me by that time confirmed one way or the other.  As
10 I said, if we are at a point where this doesn't work -- let me
11 suggest this.  If you're not going to mediate then I would like
12 to have a telephone conference with you at the end of next
13 week.  Let me just take a look at my calendar.
14                [Pause in proceedings.]
15        MS. DeJONG: Your Honor, if I recall correctly, the
16 mediation there's no cost involved in that.
17        THE COURT: That's correct.
18        MS. DeJONG: Correct?
19        THE COURT: That's correct.
20                [Pause in proceedings.]
21        THE COURT: I'm going to put a conference call on for
22 the 11th.  I have a crazy day that day but I do have time at
23 12:00.  If you're not going to mediate then I would like to
24 have the telephone conference at noon that day.  If you are
25 going to mediate just call my Chambers if you would in advance

9

1  of that and we'll go ahead and cut the mediation order and get
2  things moving in that direction.  But otherwise I'll put it on
3  for Thursday the 11th at noon.  We'll take further -- if we need
4  to talk about the scheduling order, I'll do it at that point
5  and we'll go through what needs to be done but we can do it by
6  telephone so I don't have to bring you back in here again.
7           MR. ANTWORK: So just prior to the -- prior to 12/11
8  at twelve p.m. just by a simple phone call we can inform
9  Chambers either way and then if the answer is no then obviously
10 we go forward with the telephone conference; if the answer is
11 yes then there is no telephone conference?
12          THE COURT: Right.
13          MR. ANTWORK: Okay.
14          THE COURT: What I'm going to suggest you do rather
15 than just have a call -- if you agree to mediate just if you
16 would file a one sentence letter on ECF --
17          MR. ANTWORK: Sure.
18          THE COURT:  -- so that we have a record that
19 everybody agreed.  That's fine.  Say you decided that mediation
20 is desirable by both sides and we'll go ahead and take it from
21 there.  All right?
22          MR. ANTWORK: Certainly.
23          THE COURT: All right.  Thank you both.  Good luck
24 with your client.
25          MS. DeJONG: Thank you, Judge.

```
                                                                   10
 1           MR. ANTWORK: Thank you, Your Honor.
 2           THE COURT: Thank you.
 3                          *  *  *  *  *
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
                                                                11
 1      I certify that the foregoing is a court transcript from an
 2   electronic sound recording of the proceedings in the above-
 3   entitled matter.
 4
                                 _____
 5
 6                                       Shari Riemer
 7   Dated:   December 31, 2009
```